UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 08-22859-CIV COOKE/BANDSTRA

INTERNATIONAL TEXTILE
GROUP, INC.,

   *Plaintiff*,

v.

INTERAMERICANA APPAREL
COMPANY, INC. et al.,

   *Defendant*.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

  THIS MATTER is before me on Defendants' Motion to Dismiss for lack of personal jurisdiction [D.E. 24]. I am granting Defendants' Motion.

### I. BACKGROUND

  This is a diversity action removed to this Court pursuant to 28 U.S.C. § 1441. Plaintiff International Textile Group, Inc. ("ITG") is a fabric producer incorporated in Delaware, with its principal place of business in North Carolina. (Am. Compl. ¶ 3 [D.E.14]). ITG brings several claims against foreign corporate Defendants Interamericana Apparel Company, Inc. ("IAC"), and Interamericana Products International, S.A. ("IPI") (IAC's parent corporation), and foreign individual Defendants Angel O. Rosario Viñas ("Rosario"), Luis Jose Bonilla Bojos ("Bonilla"), and Raymundo J. Haché A. ("Haché"). All of the individual Defendants are citizens and residents of the Dominican Republic. (Defs.' Mot. to Dismiss 13-14).

  Plaintiff entered into a business relationship with IAC in 2003, which led to the extension

of a line of credit to IAC in 2006. (Am. Compl. ¶¶ 4, 11). Plaintiff claims that, in making its determination of whether to extend the line of credit, it relied on misrepresentations made by IAC Executives Rosario, Bonilla, and Haché regarding the financial strength of IAC and IPI. (Am. Compl. ¶¶ 35-38). Plaintiff brings six claims against the individual Defendants: fraudulent misrepresentation (Count IV); fraud in the inducement (Count V); fraudulent transfer (Count VI and VII); breach of fiduciary duty (Count VIII) and Civil RICO (Count IX). The individual Defendants now move to dismiss the Complaint against them on the ground of lack of jurisdiction over their persons.

## II. LEGAL STANDARD

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). First, a district court considers the jurisdictional question under the forum state's long-arm statute. *Id.* "[A] federal court in a diversity action may exercise personal jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum state." *Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890 (11th Cir. 1983). If the state long-arm statute provides a basis for the assertion of personal jurisdiction, the court must next determine whether "sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Both prongs of the test must be satisfied in order to exercise personal jurisdiction over a nonresident defendant.

The party invoking jurisdiction under Florida's long-arm statute "has the burden of proving facts which clearly justify the use of this method of service of process." *Id.* at 891.

Where the defendant submits affidavits contesting the allegations in the complaint concerning jurisdiction, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).  All reasonable inferences are drawn in favor of the plaintiff when the plaintiff's complaint and supporting affidavits and documents conflict with the defendant's affidavits.   *Madara*, 916 F. 2d at 1514.

### III. DISCUSSION

Plaintiff argues that the individual Defendants are subject to general jurisdiction pursuant to § 48.193(2) [1].  We construe the Florida long-arm statute as would the Florida Supreme Court. *Oriental Imports*, 701 F.2d 889, 890 (11th Cir. 1983).  Absent some indication that the Florida Supreme Court would hold otherwise, we are bound to adhere to decisions of its intermediate courts. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).  The Florida long-arm statute provides for two types of jurisdiction: specific or general.  *Gerber Trade Finance, Inc. v. Bayou Dock Seafood Co., Inc.*, 917 So. 2d 964, 966 (Fla. 3d DCA 2005). Florida Statutes § 48.193(2) governs whether a defendant is subject to general jurisdiction.  It provides:

> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Florida courts have held that § 48.193(2)'s "substantial and not isolated activity"

---

[1] Plaintiff's Complaint alleged that specific jurisdiction was also a basis for this Court to exercise personal jurisdiction over the individual Defendants. (Compl. ¶¶ 6-8).  Despite Defendants' contention against this assertion, however, Plaintiff has not argued that specific jurisdiction is a basis for personal jurisdiction over any of the individual Defendants in either its Response in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [D.E. 39] or its Supplemental Memorandum Regarding Personal Jurisdiction Over Individual Defendants [D.E. 63].  Therefore, I will deem Plaintiff to have abandoned this argument.

requirement subsumes the "'continuous and systematic general business contacts' standard sufficient to satisfy the due process requirement of minimum contacts for general jurisdiction . . . such that if the defendant's activities meet the requirements of section 48.193(2), minimum contacts is also satisfied." *United Technologies Corp. v. Mazer*, 556 F. 3d 1260, 1275 n.16 (11th Cir. 2009) (citation omitted). In the sections that follow, I will address whether each individual Defendant is subject to general jurisdiction.

**A. Defendant Rosario**

Plaintiff alleges that Defendant Rosario is subject to this Court's general personal jurisdiction under § 48.193(2) because his contacts with Florida are substantial. In support of this assertion, Plaintiff points to a New York Merrill Lynch bank account held by Rosario that was serviced by a Miami branch, and a couple of visits made by Rosario to that Miami office; one in April 2009, and another three to four years prior to that. Rosario also made several trips to Florida between 2002 and 2006 on behalf of IAC and/or IPI, during which he visited his daughter who resided in the area. During the 1990's, Rosario held an interest in two Florida partnerships, and filed non-resident income tax returns for the earnings arising from these businesses. Between 1993 and 1997, while Rosario's son was attending college in Miami, Rosario made several transactions in Florida: he purchased a car and car insurance for his son and he rented an apartment for his son to live in while away at school. Additionally, Rosario used a Miami address assigned by a Dominican mail forwarding company for receipt of internet orders and magazines, as well as his daughter's Florida address to receive occasional correspondence and packages. Rosario also maintains an accountant in Miami. Finally, Rosario entered into an unrelated contract, whereby he agreed that any unresolved disputes arising from the contract would be arbitrated in Miami-Dade County, Florida. Although the bases that Plaintiff suggested

for the finding of general personal jurisdiction over Rosario are numerous, I find that after parsing out the legally insignificant contacts from the legally relevant ones, the remaining contacts are insufficient to support personal jurisdiction.

*1. Contacts Must Occur During the Relevant Time Period*

Jurisdiction under § 48.193(2) must rest on the defendant's activity during the relevant time period.  *See Arch Aluminum & Glass Co., Inc. v. Haney*, 964 So. 2d 228, 236 (Fla. 4th DCA 2007) ("The statutory use of the present tense verb "is engaged" shows that jurisdiction under this subsection requires current activity.").  The relevant time period in this case is between the years 2003 and 2008, from the time the business relationship between the Parties began until the filing of the present suit.  Rosario's contacts with Florida occurring prior to 2003—his business interest in the Florida partnerships, and his transactions related to his son's college education—are therefore legally irrelevant for the purpose of exerting general personal jurisdiction over Rosario.  Likewise, the visit made by Rosario to the Miami Merrill Lynch office in April 2009, eight months after the commencement of this suit, is an inappropriate contact to consider.

*2. Contacts Initiated in Corporate Capacity are Exempt under the Corporate Shield Doctrine*

The "corporate shield doctrine" protects corporate officers and employees from having to "defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer."  *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993) (quoting *Estabrook v. Wetmore*, 529 A.2d 956, 959 (N.H. 1987)).  Under this doctrine, therefore, the visits made by Rosario to Florida on behalf of IAC and/or IPI must not be considered.  The fact that Rosario visited with his daughter while he was in Florida during these business trips does not change the outcome.  The purpose of these

trips remained to conduct business for the corporations.

### 3. Remaining Contacts

The remaining contacts for consideration are: (1) a visit made by Rosario to the Miami Merrill Lynch office three to four years prior to the commencement of this suit; (2) Rosario's use of a mail forwarding company which assigned a Miami address as the collection point for internet orders and magazines; (3) Rosario's occasional use of his daughter's Florida address for receipt of correspondence and packages; (4) Rosario's maintenance of a Miami accountant; and (5) an unrelated contract wherein Rosario agreed that any unresolved disputes arising from that contract would be arbitrated in Miami-Dade County, Florida.  These contacts do not support a finding of general jurisdiction over Rosario.

Rosario swore in his affidavit that the mail forwarding company unilaterally selected Miami, Florida as the collection point for his United States orders and packages prior to forwarding the items onto him in the Dominican Republic, and Plaintiff did not present any evidence to the contrary.  This fortuitous contact, unilaterally initiated by a third party, is far from the sort of "purposeful availment" that a defendant must engage in prior to haling him into a foreign forum to defend a suit.  *See Madara v. Hall*, 916 F. 2d 1510, 1516 (11th Cir. 1990) (explaining that the requirement that the defendant purposely avails itself of the privilege of conducting activities within the forum state assures that a defendant "will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts, or because of the unilateral activity of a third party.") (citation omitted).

Furthermore, Rosario's agreement to arbitrate any issues arising from an unrelated contract in Miami-Dade County is also not a cognizable contact for the purpose of establishing general personal jurisdiction over him.  Under Florida law, even a contractual choice of forum

clause cannot confer jurisdiction over an objecting non-resident defendant, without some other independent grounds for the court to exert personal jurisdiction. *See McRae v. J.D./M.D., Inc.*, 511 So. 2d 540, 544 (Fla. 1987) ("[A] contractual choice of forum clause designating Florida as the forum cannot serve as the sole basis for asserting in personam jurisdiction over an objecting, non-resident defendant."). By analogy, an agreement to arbitrate in the forum state is not a basis to exert jurisdiction over an objecting non-resident defendant[2] where the court lacks some other independent grounds for the exertion of jurisdiction over the defendant. [3]

The remaining contacts Plaintiff alleged fall far short of the "pervasive," "continuous," and "systematic" business contacts necessary to justify the imposition of general personal jurisdiction over Defendant Rosario. *See Elmlund v. Mottershead*, 750 So. 2d 736, 737 (Fla. 3d DCA 2000) (defendant's "incidental, almost entirely personal contacts with this state between voyages come nowhere close to the 'substantial and non-isolated activit[ies] within this state' required by section 48.193(2)").

**B. Defendant Bonilla**

After parsing out the legally insignificant contacts,[4] the remaining contacts that Defendant Bonilla has had with Florida are: (1) Bonilla's treatment for a medical condition in Florida; (2) Bonilla's enrollment of his children in various Florida summer camps; and (3) Bonilla's visits to a JP Morgan office in Miami where his bank account transactions were carried out. I find that these sporadic, mostly personal contacts with Florida are grossly insufficient to support a finding

---

[2] This is even more so where, as here, the contract containing the arbitration clause is unrelated to the instant matter.

[3] Likewise, I will not consider this type of when undertaking the personal jurisdiction analysis with regards to Defendants Bonilla and Haché.

[4] The trips made on behalf of his employer, the use of the Dominican mail forwarding company, and the arbitration agreement in an unrelated contract will not be considered. *See supra* Section A.

of general jurisdiction over Bonilla.  *See Elmlund*, 750 So. 2d at 737.

**C.  Defendant Haché**

Plaintiff points to the following contacts for its assertion that this Court has general jurisdiction over Defendant Haché: (1) Haché's interest in an offshore corporation that maintains bank accounts in Florida; (2) an insurance policy obtained by Haché from a Dominican broker, who in turn used an insurer with a Florida office for the purchase of the policy; and (3) Haché, a practicing attorney, has two clients who reside in Florida.[5]  The legal weight of these contacts is insufficient to support a finding of personal jurisdiction over Haché.

Haché's minority 10% interest in an offshore company that in turn holds Florida bank accounts is a contact too attenuated to weigh in favor of imposing general jurisdiction over Haché.  Likewise, the fact that Haché's Dominican insurance broker sold Haché a policy originating from an insurer that had Florida offices is not the sort of "purposeful availment" that would justify haling Haché into court in Florida.  Plaintiff has also failed to show any evidence that Haché's two Florida clients were procured through any efforts by Haché to target Florida residents for his legal services, or that these clients represent any substantial portion of Haché's business.  *See Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006) (no general jurisdiction where defendant derived less than 1% of its revenues from matter connected to Florida and did not solicit Florida clients); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (no personal jurisdiction over defendant with six Florida clients accounting for 5% of gross revenue).

---

[5] Additional contacts that will not be considered for the reasons detailed in Section A include a trip to a Miami bank branch made in December 2008, after the commencement of this suit; trips made to Miami on behalf of his employer; an unrelated arbitration agreement; and the use of the Dominican mail forwarding company.

## IV. CONCLUSION

ACCORDINGLY, Defendants Rosario, Bonilla, and Haché's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**.

**DONE and ORDERED** in Chambers in Miami, Florida this 14th day of December 2009.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

cc:
The Honorable Ted E. Bandstra
All counsel of record